15 F.3d 1089
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Jerardo RODRIGUEZ, Plaintiff-Appellant,
v.
Patricia LILIENTHAL; Laura Austin; Charles James; Michael
Hogan, Defendants-Appellees.
 No. 93-35036.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1993.*
Decided Dec. 21, 1993.
 
 Before: SNEED, NOONAN, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jerardo Rodriguez, an Oregon state prison, appeals pro se the district court's summary judgment in favor of defendant Patricia Lilienthal and dismissal of defendants Laura Austin, Charles James, and Michael R. Hogan in his 42 U.S.C. Sec. 1983 action against prison health officials and United States District Judge Hogan, alleging that Lilienthal, Austin, and James were deliberately indifferent to his medical needs for a serious mental disorder and that defendant Hogan conspired with the other defendants to violate Rodriguez's Eighth Amendment rights. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Plaintiff-Appellant Jerardo Rodriguez is a prisoner at the Oregon State Penitentiary (OSP). He has been diagnosed with bipolar affective disorder, alcoholism, and hypertension.[1] He currently is being prescribed Lithium and Sinequan (a trade name for Doxepin)[2] for his bipolar disorder. Rodriguez is housed in the Administrative Housing Unit at OSP, and until the summer of 1991, he received his evening medication at approximately 8:30 p.m. nightly. At that time the schedule for dispensing medication changed so that inmates in the Administrative Housing Unit received their medications between 6:30 p.m. and 7:30 p.m. each night. According to Rodriguez, this time change caused him to suffer mental anguish, physical torture, physical illnesses, and mental deterioration.
 
 
 4
 On January 3, 1992, Rodriguez filed his complaint against Patricia Lilienthal, OSP's Health Services Manager, bringing his 42 U.S.C. Sec. 1983 on the grounds that imposition of the time change for medication distribution constitutes cruel and unusual punishment in violation of the Eighth Amendment. On April 22, 1992, he filed his amended complaint and added OSP medical technicians Laura Austin and Charles James as defendants, asserting that they violated his constitutional rights by dispensing his medication at 6:30 p.m. or 7:00 p.m. each night rather than 8:30 p.m.. His final amended complaint, filed June 11, 1992, added Judge Michael Hogan of the United States District Court for the District of Oregon as a defendant and alleged that Hogan, who was the presiding judge in this action, acted with with "willful corruption and conspiratorial conduct" to deprive him of his constitutional rights.
 
 
 5
 On July 2, 1992, Federal Magistrate Judge Thomas M. Coffin filed his Order and Findings and Recommendation that Hogan should be dismissed sua sponte as a defendant in this action under the doctrine of absolute judicial immunity. On October 7, 1992, United States District Judge James A. Redden issued an order adopting Coffin's findings and recommendation that Hogan should be dismissed sua sponte.[3]
 
 
 6
 On July 15, 1992, Lilienthal moved for summary judgment, and Austin and James moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). These motions were granted on November 25, 1992, and final judgment was entered. This appeal is timely.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 7
 The district court had subject matter jurisdiction pursuant to 28 U.S.C. Secs. 1331 and 1343 and 42 U.S.C. Sec. 1983. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 
 8
 We review the district court grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Summary judgment is proper when there are no genuine issues of material fact so that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has met its burden in showing that no genuine issues of material fact exist, the nonmovant can defeat summary judgment only by producing some evidence demonstrating triable issues of fact remain. Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 539 (9th Cir.1991), cert. denied, 112 S.Ct. 1603 (1992).
 
 
 9
 Our review of a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is de novo. Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 655 (1992). Our review is limited to the contents of the complaint. Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.1992), cert. denied, 113 S.Ct. 600 (1992).
 
 III.
 DISCUSSION
 
 10
 This is an appeal from the district court's grant of summary judgment and dismissal in a 42 U.S.C. Sec. 1983 action brought by Rodriguez after the schedule for dispensing medication to inmates housed in OSC's Administrative Segregation Unit was changed so that inmates received evening medications between one hour and two hours earlier. Because Rodriguez believed that the imposition of this time change on his evening receipt of Sinequan caused him to suffer mental and physical deterioration and anguish, he initially brought this action against OSC medical personnel, alleging that his medical needs were treated with deliberate indifference. Dissatisfied with the way Judge Hogan treated his case, Rodriguez added Hogan as a defendant, claiming that he was conspiring to violate his constitutional rights because he felt racial animosity toward Rodriguez. In this appeal, Rodriguez contends that defendant Lilienthal failed to satisfy her burden under Federal Rule of Civil Procedure 56(c) and that the district court's dismissal of Austin, James, and Hogan was error. We address each argument in turn.
 
 A. Summary Judgment in Favor of Lilienthal
 
 11
 Rodriguez contends that Lilienthal's imposition of a time change in dispensing evening medications to inmates housed in the Administrative Segregation Unit and her refusal to adopt reasonable measures to meet Rodriguez's special needs constitute deliberate indifference to his serious medical needs in violation of the Eighth Amendment proscription against cruel and unusual punishment. According to Rodriguez, he was prescribed Sinequan for his insomnia and needed to take it at bedtime rather than between 6:30 p.m. and 7:30 p.m. He alleges that having to take the medication at the earlier time has caused him to wake up in the middle of the night and to have nightmares. He also argues that there is no legitimate reason for the time change and that medical staff routinely are near his cell later in the evening, when he would like the medication to be administered.
 
 
 12
 "Prisoners can establish an eighth amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs." Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989). The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990). An Eighth Amendment violation does not arise because an inmate has a different opinion than prison medical personnel about the kind of medical care that is adequate in his case. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981). In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991).
 
 
 13
 Based on our review of the record, we conclude that the district court did not err in granting summary judgment to Lilienthal. Although it is evident from the medical reports that Rodriguez has a serious mental disorder, Rodriguez has failed to show that Lilienthal's response to his medical need was constitutionally deficient. Rodriguez has been seen by prison medical staff on numerous occasions and has been prescribed medication for treatment of his bipolar disorder. He has not alleged that prison officials prevented him from receiving his medication but only that he must receive the medication at a later time.
 
 
 14
 Rodriguez has been prescribed Sinequen for depression, not for insomnia as he contends.[4] Rodriguez places great emphasis on his argument that Sinequan is given to him as a sleep aid and not for depression because this renders the time change in evening drug distribution more meaningful.[5] Although Sinequan has a sedative side effect, it is used to treat depression, not insomnia. Therefore, this part of Rodriguez's argument fails to bolster his constitutional case. At the very most, Rodriguez could argue that he was improperly diagnosed, but inadequate treatment due to malpractice or gross negligence is not actionable as an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).
 
 
 15
 We recognize Rodriguez's serious medical needs but agree with the district court that Lilienthal did not treat those needs with deliberate indifference. We must afford prison officials great deference in executing policies that are necessary to preserve internal order. Whitley v. Albers, 475 U.S. 312, 321-22 (1986); Bell v. Wolfish, 441 U.S. 520, 547 (1979). As reflected by Lilienthal's affidavit, patients in OSP's Administrative Segregation Unit received their evening medications at approximately 8:30 p.m. each night until the summer of 1991. At that time a new segregation unit, the Intensive Management Unit, was opened, and medical staff had to provide evening medication to more than an additional 100 patients in that unit. In order to accommodate this increase, the schedule for evening medicine distribution was changed, and inmates in the Administrative Segregation Unit began receiving their medication between 6:30 p.m. and 7:30 p.m. nightly.
 
 
 16
 Recognizing the institutional concerns of having to dispense medications to hundreds of inmates each night, we must conclude that Lilienthal's role in imposing the new schedule does not amount to cruel and unusual punishment, especially in light of the evidence that the therapeutic value of Sinequan was not reduced by this change. Furthermore, at most Rodriguez and Lilienthal have a difference of opinion as to the appropriate scheduling of drug distribution and his medical care, which is not actionable. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989). Because we find no evidence that a material issue of fact exists concerning whether Lilienthal treated Rodriguez's serious medical needs with deliberate indifference, we affirm the district court's grant of summary judgment in her favor.
 
 B. Dismissal of Austin and James
 
 17
 In his appeal, Rodriguez claims that the district court erred in dismissing Austin and James pursuant to Federal Rule of Civil Procedure 12(b)(6) because he has alleged facts demonstrating their deliberate indifference to his serious medical needs. Rodriguez's allegations concerning Austin and James are similar to those against Lilienthal and focus on the time change in dispensing evening medications. As medical technicians, Austin and James are responsible for administering prescribed medications to inmates. Rodriguez claims that they have shown deliberate indifference to his serious medical needs because they could have distributed his Sinequan at a later hour, as demonstrated by their presence in the Administrative Segregation Unit after having administered medications, but chose not to do so.[6]
 
 
 18
 None of the allegations in Rodriguez's complaint is sufficient to state a claim for relief. Taken as a whole, his allegations do not constitute deliberate indifference to his serious medical needs in violation of the Eighth Amendment. As discussed above, Rodriguez received his medication nightly, and the therapeutic effect was not diminished by the earlier time schedule. Even assuming that Austin and James were sometimes available to dispense Rodriguez's medication later in the evening, their failure to do so does not amount to deliberate indifference.
 
 
 19
 Rodriguez's allegations regarding Austin are more specific. He claims that Austin often came to the Administrative Segregation Unit after the medicine distribution "just to philanderize with the inmates and then return to the Unit at a later time not to perform emergency calls, but to simply harass the plaintiff and let him know they could come at these later times, and pass out medication, but would not do so." Rodriguez further alleges that Austin on one occasion refused to take his blood pressure, which the physician had ordered to be taken weekly, that she tried to hit him, and that she filed an infraction against him for raising his voice when she refused to take his blood pressure.
 
 
 20
 These acts, though unpleasant encounters, are not actionable under the Eighth Amendment. Although they may reflect inmate-staff problems that should be rectified, they do not constitute deliberate indifference to Rodriguez's serious medical needs. There is no allegation that Austin prevented Rodriguez from getting his medication or that she did anything else that would significantly hinder his treatment.
 
 C. Dismissal of Judge Hogan
 
 21
 Rodriguez argues that Hogan was improperly dismissed from the action because he is guilty of conspiring with the other defendants to violate Rodriguez's constitutional rights. Judicial immunity is a defense in a 42 U.S.C. Sec. 1983 action. Pierson v. Ray, 386 U.S. 547, 554-55, 555 n. 9 (1967). "Judges are immune from civil liability in section 1983 actions for acts performed in their judicial capacities." Sherman v. Babbitt, 772 F.2d 1476, 1477 (9th Cir.1985). Judge Hogan was acting in his judicial capacity when he took the actions which form the basis of Rodriguez's claim that Hogan conspired with the other defendants to violate his constitutional rights. Therefore, he was entitled to protection under the doctrine of absolute judicial immunity, as United States District Judge Redden correctly held in dismissing Hogan sua sponte from the action.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This diagnosis was made by Dr. Dale Mortimer, a consulting psychiatrist, on April 16, 1992. However, Rodriguez was diagnosed differently in the past and was treated at Washington State Correctional System before his move to the OSP. On February 14, 1991, Dr. J. Albert Baxter, a consulting psychiatrist, diagnosed Rodriguez as having Bipolar disorder, manic type with psychotic features. In 1986, Dr. Weissert believed Rodriguez suffered from multiple personality disorder. A record made in 1983 showed him as having antisocial personality disorder
 
 
 [2]
 Sinequan is a tricyclic antidepressant with sedative side effects. It is used to treat conditions such as "psychotic depressive disorders including involutional depression and manic-depressive reactions." According to John M. Vargo, D.O., Chief Medical Officer for the OSP, Rodriguez was prescribed Sinequan as an antidepressant. (Affidavit of John Vargo) Rodriguez, however, asserts that he has been taking Sinequan for insomnia
 
 
 [3]
 During the proceedings, Rodriguez moved for the immediate recusal of Judge Hogan. On November 10, 1992, Magistrate Coffin denied the motion. Rodriguez is not appealing Coffin's denial of his motion for immediate recusal
 
 
 [4]
 The affidavit of John Vargo, D.O., the chief medical officer for the OSP, states that Rodriguez was prescribed Sinequan as an antidepressant. Vargo states that the medication does not have to be given at any particular time to preserve its therapeutic value. Because its side effects include sedation, the dosage normally is given in the evening at the hour of sleep. Vargo stated that there is no loss in therapeutic value if Sinequan is taken at a different time
 In April 1992, Dr. Dale Mortimer, a consulting psychiatrist, reported that Rodriguez was having nightmares. Dr. Mortimer suggested moving Rodriguez to the general prison population so that he could take Sinequan later in the evening, at a time when Dr. Mortimer believed it would work better for him.
 In June and October 1988, Dr. Paul Copeland, Consulting Psychiatrist in the Mental Health Section of the Washington State Penitentiary where Rodriguez was housed before the OSP, reported that Rodriguez was taking Sinequan for "Adjustment Reaction and for help with Irritability and Insomnia." But in his affidavit attached to Lilienthal's summary judgment motion, he explained that he generally prescribes Sinequan at the hour of sleep due to its sedative side effect, which is greatest 45 minutes after taking it. Copeland explained that when he prescribes Sinequan, he also notes that it may not be practical for inmates to receive their medication 40 minutes prior to sleep due to the institutional environment and scheduling distribution of medication for a large number of inmates. Thus, he explained in his affidavit, if Rodriguez was unable to receive his medication 40 minutes prior to his hour of sleep due to institution schedules, "it would not affect the therapeutic value" as an antidepressant.
 
 
 [5]
 Rodriguez asserts that with the earlier distribution, he wakes up in the early morning, has nightmares, and has become assaultive and suicidal. The affidavit of John Vargo, D.O., states that these symptoms could not be caused by the slight time change in taking Sinequan
 
 
 [6]
 Rodriguez claims that their presence in the unit at later times in the evenings is evidence of their intent to ignore his special needs. He contends that it is not impossible nor impractical for medical staff to deliver medication later and that their refusal to do so amounts to deliberate indifference. Rodriguez submitted time logs showing when medical staff entered and left the administrative housing unit