Lamont D. EVANS, Plaintiff,

v.

**Vanessa BONNER and David Teer, Defendants.**

**No. CV 01–1131(ADS).**

United States District Court,
E.D. New York.

March 27, 2002.

Lamont D. Evans, Hudson, NY, pro se.

Troy and Troy by Alexander Sansone, of counsel, Centereach, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case presents a situation involving an inmate with the HIV virus who asserts that he has been denied needed medical aid.

On February 26, 2001, the plaintiff Lamont Evans filed this action alleging civil rights violations under 42 U.S.C. § 1983, stating that he was deprived of medical care for a serious medical condition. The plaintiff asserts that this failure to furnish medical care violated his Eighth Amendment right to be free from cruel and inhuman punishment.

Specifically, the plaintiff's complaint with regard to the denial of medical aid cause of action, reads as follows:

I'm a H.I.V. positive individual and my medication to this, does not get distributed every (8) hours like it is suppose[d]

(sic) to, they distribute my medicine all within a 9 hour period, in which my Volume load, as well as my T-cell count isnt (sic) doing any better, dut (sic) to the fact all my medication is administered to (sic) close apart and my Volume load has went from 3,500 to 11,700 which is no good for me. Due to emotional distress, and this stressful of incarcerational period my health has become worse, because of all the above . . .

The case is proceeding against the two sole remaining defendants, David Teer and Vanessa Bonner, who are respectively, a nurse practitioner and a licensed practical nurse. Both defendants are employed by the former defendant Nassau Health Care Corp. The case against the former defendant Nassau Health Care Corp. was dismissed by the Court prior to the opening of the trial by reason of the failure to plead or prove a Monell violation.

The plaintiff Lamont Evans was an inmate at the Nassau County Correctional Center for a period from June 30, 2000 to July 20, 2001. While so housed, the plaintiff testified that he notified the defendants that he is HIV positive and that he was on medication prescribed by his physician.

The plaintiff testified that he was prescribed three medications for his HIV condition, Viracept, Epivir and Zerit. He stated that sometimes the medications were given to him hours later than he was supposed to receive them. The plaintiff candidly admitted that he got all his prescribed pills every day, but not on time. In fact, he stated expressly that "I'm not saying they didn't give me the medications." He stated "I just want my medications on time." The plaintiff stated that "countless times" the pills were given to him three to four hours late and at other times the pills were given to him "too close together," so that, according to the plaintiff, they would not "work."

With regard to Nurse Practitioner David Teer, the plaintiff raised three incidents. Evans complained that Teer came to see him in the office at the dorm floor instead of in the jail medical clinic on the main floor. According to the plaintiff, the problem was that at the dorm office, there was always a correction officer present and he had no privacy and had no "confidentiality." The plaintiff also raised two incidents regarding Teer that are not relevant to his "denial of medical aid" for HIV treatment cause of action. These incidents with Teer concerned injuries to his right knee and left elbow. The Court finds that those occurrences have no relevance to his cause of action at issue.

The Court finds that, as a matter of law, there was no personal involvement by the defendant David Teer with regard to the alleged denial of medical aid for the plaintiff's HIV condition.

With regard to the defendant Vanessa Bonner, the plaintiff testified that, on June 18, 2001, she came to the dorm to distribute his medications and she only had one Zerit pill and did not have the other three pills required. However, the plaintiff conceded that she did give him the other three pills that same day, "hours later." He further admitted that Nurse Bonner did not withhold his medication.

When the plaintiff was questioned by the Court as to the effect of not getting his medication on time, perhaps hours later, he stated: From October to November, 2000, he was nauseated, stiff, his joints hurt, his back was stiff, his legs were stiff and sitting on his bed with feet on the floor and stretching, his joints were bad.

However, the Court notes that the plaintiff failed to produce any medical evidence, either by expert testimony or by medical records, that the hours delay in taking the medications were a competent producing cause of these symptoms.

The plaintiff further testified that he periodically visited the Nassau County Medical Center where he was examined and treated by various physicians, which included tests for his serious ailment. In fact, the plaintiff was treated at the Infectious Disease Clinic ("IDC") both before and after his stay at the Nassau County Correctional Center. Moreover, every medication he received in jail was prescribed by the physicians at the IDC at the Nassau County Medical Center. Also, the plaintiff stated that he had blood tests only two times in his present upstate facility, while he had four blood tests in his twelve months at the Nassau County Medical Center.

A crucial witness at this trial was Dr. Pascal Frino, a board-certified specialist in internal medicine who has been employed at the Nassau County Medical Center for the past eight years. Dr. Frino reviewed the Nassau County Medical Center hospital records of the plaintiff. In particular, the hospital records disclosed that the plaintiff's viral load (a test for HIV) was 3404 on July 10, 2000, and adversely rose to 11499 on January 12, 2001. At that point, the doctors at the Nassau County Medical Center were concerned that the patient was not responding to the medications. The plaintiff's medications were changed to add Keletra. Remarkably, on April 2, 2001, less than four months later, during which time the plaintiff was treated with Keletra, his viral load fell to 775, which was a significant response to the medication. Indeed, on July 10, 2001, just prior to the plaintiff's release from the Nassau County Correctional Center, his viral load was below 400, a reading which is medically undetectable, an astonishing recovery.

The Court finds that the undisputed medical evidence is that the plaintiff's HIV condition improved while he was being

treated at the Nassau County Correctional Center.

Further, Dr. Frino testified that an HIV patient, such as the plaintiff, does not have to take the medication "on time;" namely, even if the medications were taken two or three hours later than prescribed, there would be no harm to the plaintiff. In addition, Dr. Frino testified that it would be of no medical significance to take a dose one or two hours late or even to miss one dose altogether. Significantly, Dr. Frino testified one would have to be off medication for two to three weeks in order to incur any damage. This medical evidence was unrefuted.

### DISCUSSION

■ Both defendants have moved for judgment as a matter of law, both at the end of the plaintiff's case and at the conclusion of the entire case. The standard for granting a motion for a judgment as a matter of law pursuant to Fed.R.Civ.P. 50 was set forth by the Second Circuit in *This Is Me, Inc. v. Elizabeth Taylor*, 157 F.3d 139 (2d Cir.1998):

> "[T]he same standard that applies to a pretrial motion for summary judgment pursuant to Fed.R.Civ.P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." *Piesco v. Koch*, 12 F.3d 332, 341 (2d Cir.1993); *see also* Advisory Committee Note to 1991 Amendment of Fed.R.Civ.P. 50 (recent adoption of term "judgment as a matter of law" to replace both the term "directed verdict" and the term "judgment n.o.v." was intended to call attention to the close relationship between Rules 50 and 56). A district court may not grant a motion for a judgment as a matter of law unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [per-

sons] could have reached." *Cruz v. Local Union No. 3, Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1154–55 (2d Cir. 1994) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation marks omitted).... [A]s in the case of a grant of summary judgment, the evidence must be such that "a reasonable juror would have been compelled to accept the view of the moving party." *Piesco*, 12 F.3d at 343.

■ The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment" with regard to inmates in a correctional facility. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). The Eighth Amendment also applies to prison officials when they provide medical care to inmates. *See Estelle v. Gamble*, 429, U.S. 97, 103, 429 U.S. 97, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to his serious medical needs." *Id.* at 104, 97 S.Ct. at 291.

The deliberate indifference Eighth Amendment standard was clearly set forth by the Second Circuit in *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), as follows:

> The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain") (citations omitted). Second, the

charged official must act with a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298, 111 S.Ct. at 2324. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *See Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety"; the official must both be aware of facts from which the inference could be drawn that a "substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979.

■ In this case, based upon the testimony adduced at the trial, the Court finds that the alleged injury to the plaintiff resulting from not getting his medicine "on time" does not rise to a "sufficiently serious" level. Even if the Court were to accept the fact that the aches, pains and joint problems suffered by the plaintiff were caused by the untimely medication, the Court finds, as a matter of law, that such symptomotology is not sufficiently serious to rise to a constitutional level. These symptoms, even if related to the untimely medication, do not constitute "a condition of urgency [or] one that may produce death, degeneration or extreme pain," as a matter of law.

■ Further, as part of the second prong of the Section 1983 denial of medical aid cause of action, there is no proof that either defendant Teer or defendant Bonner acted with a sufficiently culpable state of mind. In fact, as to Teer, the plaintiff failed to prove that he had anything to do with the late medications. With regard to Nurse Bonner, there was no evidence presented—from the one situation where she failed to deliver the medications on time—that she knew that a substantial risk of serious harm to Evans would occur by the late delivery and that she disregarded such a risk. On the contrary, her failure to deliver the medications on time—she delivered all of them later—could at most be found to be negligence. Mere negligence cannot be the basis of a Federal Section 1983 denial of medical aid cause of action.

Further, interestingly, there have been decided Section 1983 denial of medical aid cases involving HIV. In *Leon v. Johnson*, 96 F.Supp.2d 244 (W.D.N.Y.2000) the plaintiff inmate complained, among other things, of the delay in giving him his prescribed AIDS medication for several weeks. The District Court granted summary judgment dismissing the complaint. The Court's language is relevant to this Court's determinations:

> I likewise conclude that, absent some concrete physical harm, a delay in providing medication is not an "injury" of the type contemplated by the statute. First, there are the words themselves: "physical injury." Congress's use of these words suggests that there must be some actual harm to the plaintiff, and that the harm must be bodily in nature. The "harm" alleged here, however—a delay in receipt of medication to treat plaintiff's disease—is at most merely a potential harm, possibly putting plaintiff at risk of a worsened condition. Plaintiff does not allege that his condition did become worse as a result of not taking his medication, however, and there is no evidence that he suffered any adverse effects from the delay. *See Zehner v. Trigg*, 952 F.Supp. 1318, 1322–23 (S.D.Ind.) (Dismissing Eighth Amendment claim based on prisoners' exposure to asbestos where no physical injury could be shown, *aff'd*, 133 F.3d 459, 461 (7th Cir.1997)).

\* \* \* \* . \* \*

For the reasons stated, I do not accept that argument, and I also find that the bare allegation of pain and suffering in the complaint (which does not say whether the pain and suffering were physical or emotional) is insufficient to defeat defendants' motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cain v. Commonwealth of Virginia,* 982 F.Supp. 1132, 1135 n. 3 (E.D.Va.1997) (headaches causing vision loss and requiring pain medication as well as numbness, joint pain and stomach cramps did not constitute physical injury within scope of § 1997e(e)); *Pinkston–Bey v. DeTella,* 1997 WL 158343, at *3, 1997 U.S. Dist. LEXIS 3969 (N.D.Ill. March 31, 1997) (severe headaches not physical injury). Even if plaintiff could show that he suffered a physical injury for purposes of § 1997e(e), however, this claim would have to be dismissed, because plaintiff's allegations and the evidence presented do not indicate any "deliberate indifference" to plaintiff's serious medical needs. At most the evidence suggests that some defendants may have been negligent, but that is not enough to support a § 1983 claim. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994); *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989).

Also, in *Davis v. Prison Health Services,* 2002 WL 237871, 2002 U.S. Dist. LEXIS 2839 (D.C.Del. Feb. 5, 2002), decided just one and one-half months ago, the plaintiff inmate, who was HIV positive, complained that he was not receiving all the medication prescribed by his personal doctor ... The inmate admitted that he was given medication for his condition but it may not have been all the prescribed medication. The plaintiff's complaint was dismissed on motion.

The law is clear that mere medical malpractice is insufficient to present a constitutional violation. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). Prison authorities are given extensive liberty in the treatment of prisoners. The proper forum for a medical malpractice claim is in state court under the applicable tort law. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285.

Plaintiff admits in his complaint that he has been given medication for his H.I.V. condition, although it may not be all of the medication that has been prescribed by his family doctor. (D.I. 2 at 3). Plaintiff also admits that he has been given blood tests, although they may not have been taken every three months and he has not been informed of the results. (*Id.*). The record does not indicate any form of deliberate indifference on behalf of the defendants and does not rise to a constitutional violation. Courts will not "second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment." *Boring,* 833 F.2d at 473 (citing *Pierce,* 612 F.2d at 762). The plaintiff may disagree with the medical treatment which he is receiving, however, this does not support a § 1983 claim. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame,* 585 F.2d 1183, 1186 (3d Cir. 1978) (citing *Roach v. Kligman,* 412 F.Supp. 521 (E.D.Pa.1976)).

Further, in non-HIV-related cases, some delay in treatment generally does not establish a constitutional violation. In *Llorente v. Rozeff,* 2001 WL 474261, 2001 U.S.

Dist. LEXIS 5655 (N.D.N.Y.April 12, 2001) the plaintiff inmate complained of delay in treatment for an ear injury:

Plaintiff also alleges that the defendants conduct in delaying him medical assistance caused him permanent injury. (Complaint P 24). A delay in providing medical care to an arrestee does not by itself violate the constitution. *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). To establish a constitutional violation, an arrestee must show that he suffered substantial harm as a result of the delay in receiving medical care. *de La Paz v. Danzl*, 646 F.Supp. 914, 922–23 (D.C.N.D.Ill.1986). A plaintiff who complains that a "delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). Not only has plaintiff not done this, he acknowledges that he has not identified any expert who will testify that his injury was aggravated as a result of the claimed delay in medical treatment, (Pint.7.1(a)(3) Respn to Peplowski P 36), and admits that no medical records exist which supports that a delay in medical care results in aggravation of his injury. (*Id.* at 37).

The evidence submitted does not support plaintiff's claim that defendants Rozeff and Peplowski exhibited deliberate indifference to plaintiff's medical needs, and these defendants are entitled to summary judgment on plaintiff's claim of deliberate medical indifference to his medical needs.

Finally, in *Rodriguez v. Lilienthal*, 15 F.3d 1089 (9th Cir.1993),, a plaintiff inmate diagnosed with bipolar disorder and other ailments complained that his medication schedule was changed. The Ninth Circuit affirmed the granting of summary judgment dismissing his complaint.

Based on our review of the record, we conclude that the district court did not err in granting summary judgment to Lilienthal. Although it is evident from the medical reports that Rodriguez has a serious mental disorder, Rodriguez has failed to show that Lilienthal's response to his medical need was constitutionally deficient. Rodriguez has been seen by prison medical staff on numerous occasions and has been prescribed medication for treatment of his bipolar disorder. He has not alleged that prison officials prevented him from receiving his medication but only that he just received the medication at a later time.

\*   \*   \*   \*   \*   \*

At the very most, Rodriguez could argue that he was improperly diagnosed, but inadequate treatment due to malpractice or gross negligence is not actionable as an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

\*   \*   \*   \*   \*   \*

Recognizing the institutional concerns of having to dispense medications to hundreds of inmates each night, we must conclude that Lilienthal's role in imposing the new schedule does not amount to cruel and unusual punishment, especially in light of the evidence that the therapeutic value of Sinequan was not reduced by this change. Furthermore, at most Rodriguez and Lilienthal have a difference of opinion as to the appropriate scheduling of drug distribution and his medical care, which is not actionable. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). Because we find no evidence that a material issue of fact exists concerning whether Lilienthal treated Rodriguez's serious medical needs with deliberate indifference, we affirm the

district court's grant of summary judgment in her favor.

\*    \*    \*    \*    \*    \*

None of the allegations in Rodriguez's complaint is sufficient to state a claim for relief. Taken as a whole, his allegations do not constitute deliberate indifference to his serious medical needs in violation of the Eighth Amendment. As discussed above, Rodriguez received his medication nightly, and the therapeutic effect was not diminished by the earlier time schedule. Even assuming that Austin and James were sometimes available to dispense Rodriguez's medication later in the evening, their failure to do so does not amount to deliberate indifference.

### CONCLUSION

For all of the reasons stated above, the Court finds that, even giving credence to all of the plaintiff's testimony and evidence, there can be but one conclusion as to the verdict in this case that reasonable jurors could reach, namely, not only that there was no deliberate indifference to the plaintiff's serious medical needs, there was no indifference at all. Moreover, the failure to give plaintiff his medications on time on the occasions alleged, thankfully, caused no serious injury to him. On the contrary, the proof is unrefuted that his HIV condition improved by the time he left the facility.

Accordingly, the motion by the defendants pursuant to Rule 50 for judgment as a matter of law, is granted. The complaint is dismissed against defendants David Teer and Vanessa Bonner.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**