**Willie SMITH, Plaintiff–Appellant,**

v.

**Nurse CARPENTER, Superintendent Wilkinson, Superintendent at Pharsalia Corr. Facility, Defendants–Appellees.**

**Docket No. 01–0294.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 7, 2002.

Decided: Jan. 14, 2003.

Erik T. Koons, Howrey Simon Arnold & White, LLP, Washington, D.C. (Tifanie Gardner, Georgetown University Law Center, on the brief), for Plaintiff–Appellant.

Marcus J. Mastracco, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York; Nancy A. Spiegel, Assistant Solicitor General, on the brief), Albany, N.Y., for Defendants–Appellees.

Before: WALKER, Chief Judge, CARDAMONE and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

Plaintiff-appellant Willie Smith ("Smith") appeals from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Judge*), denying his motion for a new trial following a jury verdict in favor of the defendant prison officials, Colleen Carpenter ("Carpenter") and James Wilkinson ("Wilkinson"). Smith filed suit under 42 U.S.C. § 1983 alleging that the defendants violated the Eighth Amend-

ment's prohibition against cruel and unusual punishment by depriving him of HIV medication while he was incarcerated at the Camp Pharsalia Correctional Facility ("Camp Pharsalia"). At trial, Smith presented evidence that he had been deprived of HIV medication on two separate occasions for several days at a time. The jury returned with a verdict for the defendants after determining that Smith had not proven, by a preponderance of the evidence, that he suffered from an objectively "serious medical need." The District Court denied Smith's motion for a new trial, noting that the jury's verdict was supported by medical testimony indicating that Smith suffered no adverse medical effects from the missed medication. On appeal, Smith argues that the District Court misapplied the relevant Eighth Amendment standard in denying his request for a new trial by concluding that the jury was entitled to consider evidence regarding the absence of actual medical injury. We hold that such evidence may be considered as a relevant factor in assessing whether an alleged denial of medical care is sufficiently serious to establish a claim under the Eighth Amendment and therefore affirm.

## BACKGROUND

In April 1999, Smith filed suit against the defendants seeking damages under 42 U.S.C. § 1983. Smith contends that the defendants[1] acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment by depriving him of essential HIV medication on

two separate occasions while he was incarcerated at Camp Pharsalia, despite his repeated requests for the medication.

## A. Trial

In October 2001, a jury trial was held on Smith's denial of medical care claim. At trial, Smith testified that physicians with the New York State Department of Correctional Services ("DOCS") had prescribed a drug-therapy regimen to treat his HIV which included a combination of three drugs, Saquinavir mesylate ("Saquinavir"), Combivir, and Bactrim.[2] Smith also testified that the defendants failed to provide him with these prescription drugs on two different occasions during his incarceration at Camp Pharsalia. The first episode occurred in October 1998 due to a delay in refilling Smith's prescriptions after his existing medication ran out. As a result, Smith missed taking his scheduled doses of Saquinavir and Bactrim for seven days. The second episode occurred in January 1999 after Smith's HIV medication was confiscated during a random search of his living quarters. Smith testified that he was only provided with replacement medication five days later after he was transferred to the Oneida Correctional Facility.

Smith also explained that it is important to maintain strict compliance with his drug regimin in order to prevent deterioration of his immune system and to slow the progression of his HIV infection, a condition that can ultimately lead to death.[3]

1. Defendant Wilkinson is the Superintendent of Camp Pharsalia, and defendant Carpenter is the registered nurse responsible for overseeing the medical needs of all Camp Pharsalia inmates.

2. Smith was diagnosed with HIV when he entered the New York state correctional system in 1995.

3. To establish the importance of taking his medication on a consistent basis, Smith introduced into evidence a pamphlet entitled "Drug Holidays," included in the packaging for the drug Combivir, which warns patients against skipping doses of Combivir. The pamphlet states that missing medication can lead to viral mutation and drug resistance, potentially endangering the patient's health.

Although Smith testified that he suffered temporary itching, severe headaches, as well as stress due to the missed medication, he did not introduce evidence that his HIV infection or overall health worsened as a result of the two isolated episodes of missed medication.

At trial, the defendants conceded that it is important for HIV patients to follow a regular drug regimen. Defendants sought to demonstrate, however, that the alleged episodes of missed medication did not subject Smith to a serious risk of harm and presented evidence to counter Smith's allegations of medical injury. Defendants' medical expert, Dr. Marshall Trabout, a regional medical director for the DOCS, testified that Smith's reported symptoms of itching and headaches were likely side effects of the medications themselves and would not have been caused by the lack of HIV medication. Dr. Trabout agreed that missing HIV medication can be potentially harmful in some circumstances, possibly leading to viral mutation and drug resistance. However, based on a review of Smith's medical records, Dr. Trabout concluded that Smith had not developed any drug resistance because of the alleged interruptions in drug treatment and that Smith's viral load had actually improved during his incarceration.[4] Dr. Trabout also testified that, in his opinion, Smith had received very good HIV care at Camp Pharsalia and that Smith had suffered no adverse effects to his health as a result of missing his HIV medication for the brief periods of time at issue.

Smith also testified that one of the doctors who treated him while he was incarcerated at Camp Pharsalia told him not to take "drug holidays."

4. "Viral load" refers to the amount of HIV in a patient's bloodstream.

## B. Jury Verdict

After the close of evidence, the District Court instructed the jury that Smith had to demonstrate by a preponderance of the evidence that he suffered from a "serious medical need" in order to prevail on his Eighth Amendment claim. Tracking Smith's proposed jury instructions, the District Court charged the jury as follows:

> The term 'serious medical need' means a condition of urgency, one that might produce extreme pain, degeneration or death. In other words, it is a condition presenting a substantial risk of harm. It is not disputed in this case that plaintiff suffers from the HIV virus. If you find that plaintiff's condition did not amount to a serious medical need, then you must find for the defendants .... Conversely, if you find that plaintiff's condition constituted a serious medical need, you must then consider whether he has demonstrated by a preponderance of the evidence that defendants knew of that condition and disregarded it.[5]

The special verdict sheet that was jointly prepared by the parties mirrored the jury charge. The first question on the verdict sheet asked: "Has plaintiff proven by a preponderance of the evidence that he suffered from a serious medical need, yes or no.... If your answer ... is no, stop, have the foreperson sign and date the verdict sheet and inform the marshal that you have reached a verdict."[6] The jury returned with a verdict for the defendants,

5. Smith did not object to the jury charge or the verdict sheet, nor did he request a more specific jury instruction barring the jury from considering "adverse effects" in considering if an objectively serious medical need existed.

6. The remaining questions on the verdict sheet related to deliberate indifference, causation, and damages.

answering "no" to this critical threshold question.

### C. Motion for a New Trial

Following the jury's verdict, Smith moved for a new trial on the grounds that: (1) there was insufficient evidence to support the jury's verdict, (2) the verdict was against the weight of the evidence, (3) the jury ignored the District Court's instructions, and (4) the verdict could not stand as a matter of law. The District Court denied the motion for a new trial, rejecting Smith's argument that his HIV-positive status automatically constituted a "serious medical need" for Eighth Amendment purposes. The District Court found that there was sufficient evidence to support the jury's verdict based on Dr. Trabout's testimony that "although plaintiff was HIV-positive, he suffered no adverse effects from missing his prescriptions for the short periods of time in question." The District Court further explained that the jury could have concluded, consistent with the evidence presented at trial, that Smith had failed to demonstrate that his health had been placed in substantial jeopardy due to the brief interruptions in his HIV medication.

Smith now appeals, arguing that the District Court applied the wrong Eighth Amendment standard in denying his motion for a new trial.[7] Smith contends that the District Court erroneously considered evidence of *actual harm* in assessing the jury's finding of no serious medical need when he was only required to establish a *potential* for serious future injury in order to state an Eighth Amendment denial of medical care claim. Smith also argues that evidence pointing to an absence of adverse medical effects is only potentially relevant in analyzing questions of deliberate indifference or causation—not as part of the initial serious medical need inquiry.

### DISCUSSION

### A. Standard of Review

■ We review the district court's decision to deny a motion for a new trial pursuant to Fed.R.Civ.P. 59 for abuse of discretion. *See New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 248 (2d Cir.2002). Generally, a motion for a new trial "should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir.1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir.1997)). In this case, we need only determine whether the District Court abused its discretion by applying an incorrect legal standard in evaluating the jury's verdict. *See Gasperini v. Center for Humanities, Inc.*, 149 F.3d 137, 141–42 (2d Cir.1998) (a district court abuses its discretion when its decision to deny a motion for a new trial "results from an erroneous view of the law").

### B. Eighth Amendment Standard

■ "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of

---

7. Smith also argued on appeal that the jury's verdict was supported by insufficient evidence. As Smith's counsel withdrew this sec- ond claim of error during oral argument, we focus on his first claim of legal error.

the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind. *See id.; Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

■■■ Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. *See Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285; *Snipes v. DeTella,* 95 F.3d 586, 590–91, (7th Cir.1996), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 980, 136 L.Ed.2d 863 (1997). In *Estelle v. Gamble,* the Supreme Court explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat "a prisoner's *serious* illness or injury" resulting in the infliction of unnecessary pain and suffering. *Estelle,* 429 U.S. at 105, 97 S.Ct. 285 (emphasis added). "Because society does not expect that prisoners will have unqualified access to health care," a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Chance,* 143 F.3d at 702 (not all claims of inadequate medical care are "constitutionally cognizable"). Similarly, a prisoner must demonstrate more than "an inadvertent failure to provide adequate medical care" by prison officials to successfully establish Eighth Amendment

liability. *See, e.g., Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285 (noting that mere negligence in diagnosis or treatment is insufficient to state a valid Eighth Amendment claim and emphasizing that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" *Chance,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), a state of mind "equivalent to the familiar standard of 'recklessness' as used in criminal law." *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (per curiam).

In this case, the jury rejected Smith's Eighth Amendment claim for failure to show an objectively serious medical need, and did not reach the question of the defendants' state of mind. Because only the severity of the alleged denial of care is at issue, we therefore need not address whether the evidence also establishes deliberate indifference on the part of the defendants. Although the relevant "serious medical need" standard is well established by our prior decisions, we find it worthwhile to clarify this standard in light of the unique facts and procedural posture of this case.

In a typical Eighth Amendment denial of medical care case, the prisoner is challenging the defendants' failure to provide adequate medical care to treat the prisoner's medical condition.[8] In this case, how-

---

8. Notably, our prior decisions primarily discuss the serious medical need standard in the context of prisoners who claim that they failed to receive any treatment for their asserted medical condition. *See Brock v. Wright,* 315 F.3d 158 (2d Cir.2003) (failure to treat painful facial keloid); *Harrison v. Barkley,* 219 F.3d 132, 136–37 (2d Cir.2000) (refusal to treat cavity at risk of "acute infec-

tions, debilitating pain and tooth loss" unless prisoner consented to extraction of another diseased tooth); *Chance,* 143 F.3d at 702 (untreated dental problems that resulted in chronic pain for a period of six months resulting in tooth degeneration); *Hemmings v. Gorczyk,* 134 F.3d 104, 106–07 (2d Cir.1998) (per curiam) (failure to treat ruptured Achilles tendon which resulted in swelling and pain);

ever, Smith does not complain about the general level of HIV treatment that he received while incarcerated at Camp Pharsalia. Instead, Smith's Eighth Amendment claim is based solely on interruptions in the provision of HIV medication prescribed by DOCS doctors as part of his overall HIV treatment. This case is also procedurally unique, as the serious medical need question was submitted to the jury for factual determination. In several prior decisions, we have examined the relevant record to determine whether a prisoner presented a viable jury question on the issue of serious medical need. *See, e.g., Brock,* 315 F.3d at 160 (motion for summary judgment); *Chance,* 143 F.3d at 702–703 (motion to dismiss); *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (motion for directed verdict). We have never had occasion, however, to consider what factors the jury may consider when asked to actually determine whether the prisoner's asserted medical need is sufficiently serious to trigger Eighth Amendment concerns. We therefore address Smith's "adverse effects" argument with these considerations in mind.

## C.  Serious Medical Need

Smith urges the Court to focus on his HIV-positive status as the serious medical need at issue, arguing that he has demonstrated a serious medical need, because it is undisputed that the failure to treat HIV can result in fatal injury. *See, e.g., Montgomery v. Pinchak,* 294 F.3d 492, 500 (3rd Cir.2002) (prisoner diagnosed with HIV has demonstrated a serious medical need for Eighth Amendment purposes). We do not argue with the proposition that HIV is

a serious medical condition that requires medical treatment. However, Smith does not contend that the defendants ignored his HIV infection by generally failing to provide appropriate treatment, conduct which may well violate the Eighth Amendment. Rather, it is undisputed that Smith was receiving HIV medication and other necessary medical care for his condition. His lawsuit only challenges the defendants' failure to provide him with prescription HIV medication during a seven-day period in October 1998 and a five-day period in January 1999. Accordingly, this case is conceptually different from the ordinary denial of medical care case, because Smith's claim is based on short-term interruptions in the otherwise adequate treatment which he was receiving for his underlying medical condition.

■ Because "[t]he objective component of an Eighth Amendment claim is … [necessarily] contextual" and fact-specific, *Hudson,* 503 U.S. at 8, 112 S.Ct. 995, the serious medical need inquiry must be tailored to the specific circumstances of each case. When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious," to support an Eighth Amendment claim. *Chance,* 143 F.3d at 702. There is no need to distinguish between a prisoner's underlying "serious medical condition" and the circumstances

Koehl v. Dalsheim, *85 F.3d 86, 87–88 (2d Cir.1996) (confiscation of prescription eyeglasses necessary to correct serious vision problem and subsequent denial of medical treatment resulting in loss of vision in one eye);* Hathaway v. Coughlin, *37 F.3d 63, 64–* 65, 67 (2d Cir.1994) (failure to remove broken hip pins from prisoner's hip for over three years despite prisoner's complaints of persistent pain), *cert. denied, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).*

of his "serious medical need" when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition.[9] In a case like this, however, where the prisoner is receiving appropriate on-going treatment for his condition, but, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment, the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner.[10] *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Montgomery*, 294 F.3d at 499 (to establish an Eighth Amendment claim based on the denial of medical care, "[f]irst, [the] plaintiff must make an 'objective' showing that the *deprivation* was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious") (emphasis added); *cf. Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (in evaluating an Eighth Amendment claim, courts should consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation").

■ As we noted in *Chance*, it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes. *Chance*, 143 F.3d at 702–03; *cf. Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188–89 (11th Cir. 1994) (explaining that the seriousness of a delay in medical treatment may be decided "by reference to the *effect* of delay in treatment.... [c]onsequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay") (emphasis in original). For example, the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment. *See Chance*, 143 F.3d at 702. Such risks may be absent, however, although an inmate suffers from an admittedly serious medical condition such as HIV, where the alleged lapses in treatment are minor and inconsequential. *Cf. Evans v. Bonner*, 196 F.Supp.2d 252, 256 (E.D.N.Y.2002) (holding that untimely provision of medication to HIV-positive in-

---

9. Indeed, we have sometimes used these terms interchangeably in analyzing denial of medical care claims under the Eighth Amendment. *See, e.g., Brock*, 315 F.3d at 162; *Harrison*, 219 F.3d at 136–37.

10. In *Montgomery*, the Third Circuit held that HIV is a life-threatening condition that meets the serious medical need standard under the Eighth Amendment. *Montgomery*, 294 F.3d at 500. However, *Montgomery* also acknowledged that the effect of denying treatment is relevant to the serious medical need inquiry. *See id.* The plaintiff in *Montgomery* alleged that prison officials refused to provide him with necessary HIV medication for a ten month period and that his white blood cell count dropped to a dangerously low level by the end of this period. *See id.* at 495. It was in this context, where neither party disputed whether the serious medical need standard had been met, that the Third Circuit determined that the objective Eighth Amendment standard had been satisfied. Thus, *Montgomery* is not a case about a temporary delay or interruption in care. As we recognized in *Harrison*, when medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as "delayed treatment" but may properly be viewed as a "refusal" to provide medical treatment. *Harrison*, 219 F.3d at 137.

mate did not cause sufficiently serious injury to give rise to an Eighth Amendment violation). We therefore conclude, given the facts of this case and the nature of Smith's claim, that the District Court properly focused on the particular risks attributable to the missed HIV medication, rather than on Smith's HIV-positive status alone, in evaluating the jury's finding that Smith failed to demonstrate a serious medical need.[11]

**D. Consideration of Adverse Effects**

We further agree that the jury was entitled to consider the absence of adverse medical effects in evaluating the objective sufficiency of Smith's Eighth Amendment claim. We have previously explained that a serious medical need "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir.2000) (quoting *Chance*, 143 F.3d at 702). As the Seventh Circuit noted in *Gutierrez v. Peters*, 111 F.3d 1364 (7th Cir.1997), given the fact-specific nature of Eighth Amendment denial of medical care claims, it is difficult to formulate a precise standard of "'seriousness' ... that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific (*i.e.*, excluding those conditions that are not)." *Id.* at 1372; *see also Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (noting the objective component of Eighth Amendment claims is sensitive to contemporary standards of decency and accordingly "admits of few absolute limitations"); *Brock*, 315 F.3d at 162 ("There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition.").

Just as the relevant "medical need" can only be identified in relation to the specific factual context of each case, the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances. *See Chance*, 143 F.3d at 702–03 (emphasizing that different factors may determine whether a given medical condition is sufficiently serious to raise Eighth Amendment concerns). The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue. *See Hill*, 40 F.3d at 1188–89; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208–09 (1st Cir.1990), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm.[12]

11. We note that the language of the "serious medical need" jury instruction may have been somewhat confusing, as it appears to conflate Smith's underlying HIV infection with the specific risk of harm caused by the brief interruptions in his medication. However, Smith is not appealing on the basis of the jury instruction. Moreover, as the evidence presented at trial focused on the potential effects of the missed medication, the District Court's interpretation of the jury's verdict is reasonable and in accordance with the trial testimony.

12. To some extent, the subjective deliberate indifference inquiry may overlap with the objective serious medical need determination. Similar evidence, including evidence of adverse effects, may be relevant to both components. *See DesRosiers v. Moran*, 949 F.2d 15, 18–19 (1st Cir.1990). However, this does not suggest, as Smith argues, that evidence of

■ Smith correctly argues that an Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and that actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation. *See Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (the potential future health risk caused by exposure to second hand smoke may form the basis for relief under the Eighth Amendment); *cf. White v. Napoleon*, 897 F.2d 103, 111 (3rd Cir.1990) (prisoner need not allege that his medical condition worsened in order to state a viable Eighth Amendment claim for denial of medical care). As the Supreme Court recognized in *Helling*, prison officials may not ignore medical conditions that are "very likely to cause serious illness and needless suffering" in the future even if the prisoner has "no serious current symptoms." *Helling*, 509 U.S. at 33, 113 S.Ct. 2475. Yet, although demonstrable adverse medical effects may not be required under the Eighth Amendment,[13] the absence of present physical injury will often be probative in assessing the risk of future harm. *Cf. Hudson*, 503 U.S. at 7, 112 S.Ct. 995 (while serious injury is not required to bring an Eighth Amendment excessive force claim, "[t]he absence of serious injury is . . . [still] relevant to the Eighth Amendment inquiry").

Because we are not reviewing the sufficiency of Smith's pleadings, or even evaluating whether the evidence presented by Smith raises a jury question on his Eighth Amendment claim,[14] we are not asked to determine whether adverse medical effects are required, as a threshold matter, to state a viable Eighth Amendment claim. Instead, the only question before us is whether the District Court properly held, based on the facts of this case, that the jury was entitled to weigh the absence of adverse effects in evaluating the objective sufficiency of Smith's claim.

■ Turning to the evidence presented at trial, we discern no reason to limit the jury's inquiry in the manner which Smith suggests. We note that more than twenty-one months elapsed between the alleged deprivation of HIV medication and trial. Although Smith suffered from an admittedly serious underlying condition, he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health, nor did he present any evidence explaining why the absence of actual physical injury was not a relevant factor in assessing the

adverse effects must be limited to the deliberate indifference inquiry.

13. This may be especially true where a prisoner seeks injunctive relief to prevent future harm from the denial of medical care. As the Supreme Court has noted, "It would be odd to deny an injunction to inmates . . . on the ground that nothing yet had happened to them." *Helling*, 509 U.S. at 33, 113 S.Ct. 2475. However, Smith is not seeking injunctive relief in this case.

14. We do not mean to suggest that Smith's claim would not have survived a motion to dismiss or motion for summary judgment. *Cf. Gutierrez*, 111 F.3d at 1372 n. 7 (cautioning that "the 'seriousness' determination [in Eighth Amendment denial of medical care

cases] will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition"). In this case, however, at Smith's own request, the serious medical need question was submitted to the jury, whose factual findings are entitled to substantial deference. *See United States v. Rea*, 958 F.2d 1206, 1221–22 (2d Cir.1992) ("Matters of . . . choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments.").

severity of his medical need.[15] Moreover, the defendants presented credible medical testimony suggesting that Smith had not been exposed to an unreasonable risk of future harm due to the periods of missed HIV medication. Under these circumstances, the jury was free to consider the absence of concrete medical injury as one of the relevant factors in determining whether the asserted deprivation of medical care was sufficiently serious to establish a claim under the Eighth Amendment. We therefore find no error in the District Court's decision to deny Smith's motion for a new trial.

## CONCLUSION

In conclusion, we hold that the District Court properly determined that the jury could consider evidence regarding the absence of adverse medical effects in evaluating whether the alleged denial of medical care satisfies the objective Eighth Amendment serious medical need standard. Accordingly, the judgment of the District Court denying plaintiff's motion for a new trial is AFFIRMED.

15. Our holding is based on the specific evidence presented in this case. We do not intend to set forth a *per se* rule designed to be uniformly applicable in all denial of medication cases. Other prisoners may be able to present medical evidence indicating that interruptions in the provision of prescription medication significantly increase the risk for medical injury, even in the absence of present, detectable adverse effects.