Raymond MYRIE, Plaintiff,

v.

Dr. Jaime CALVO/CALVOBA, Gina Willis (Medical Records File Clerk), C.O. Kendall Dade Bds# 14407, Defendants.

No. 07 Civ. 8834(CM).

United States District Court,
S.D. New York.

Nov. 25, 2008.

Raymond Myrie, Jr., Bronx, NY, pro se.

Steven Douglas Weber, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge:

This case involves a *pro se* inmate-detainee's claim that he was denied his Eighth Amendment right to adequate medical care. Before the Court is the defendants' pre-answer motion to dismiss the Complaint.

For the reasons discussed below, the defendants' motion is granted.

### Background

The following allegations are accepted as true for the purposes of this motion. *See, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 204 (2d Cir.2008).

Plaintiff, Raymond Myrie Jr., ("Myrie") is an inmate-detainee presently incarcerated on Rikers Island. (*See* Am. Compl. I.A.)

On July 25, 2007, Myrie alleges that he went to "sick call" at the Otis Bantum Correctional Center ("OBCC") to "renew his consultation for a double mattress" (the Court has no idea what that means) and to re-schedule an optometrist's appointment, which he needed in order to obtain replacement eye glasses. (*Id.* II.) Plaintiff had been scheduled to meet with an optometrist on June 22, 2007.(*Id.*) Plaintiff missed the June appointment because the New York City Department of Correction ("NYC DOC") "neglected" to provide him

with transportation to his appointment. (*Id.*)

During the July 25 visit, plaintiff met with defendant Dr. Jaime Calvo ("Calvo"). Calvo renewed plaintiff's consultation for a double mattress, but "neglected" to reschedule him for an optometrist appointment. (*Id.* II.D.) Plaintiff alleges that he told Calvo that he urgently needed to see an optometrist because he needed to wear eye glasses in order to see and read. (*Id.*) Plaintiff received a new pair of eye glasses on September 1,2007. (*Id.* III.) He does not explain how that came to be.

On July 31, 2007, plaintiff went to the OBCC clinic at or around 7:40 p.m. (*Id.*) He does not allege why he went to the clinic.

When plaintiff arrived at the clinic, the medical records file clerk, defendant Gina Willis ("Willis"), could not find his medical file. (*Id.*) The misplaced file was located at or around 10:40 p.m. (*Id.*) At or around 12:20 a.m., plaintiff was told by defendant C.O. Kendall Dade ("Dade") that he had to leave the clinic, doctors were "unavailable." Plaintiff alleges in fact, that two doctors were in the clinic area at the time, "tending to the new admissions, overlooking the sick call detainees." (*Id.*) At or around 1:20 a.m., plaintiff was told that there was a medical emergency, and he was escorted back to his housing area without being seen. (*Id.*)

Plaintiff alleges that the failure to schedule an optometrist's appointment promptly denied him his Eighth Amendment right to adequate medical care. (*Id.* V.) He alleges that he did not receive eye glasses for "3½ months," although plaintiff affirmatively alleges that he obtained new glasses on September 1, which is a little over a month after he visited with Dr. Calvo. Plaintiff alleges that the delay in getting him new glasses caused his vision to deteriorate, which caused him to have headaches. (*Id.*) Additionally, plaintiff claims that the "extreme change" in his eye glass prescription caused by the delay in getting him new glasses now means he sometimes must remove his new glasses, which causes him to strain his eyes. (*Id.*) Plaintiff does not, however, allege what his prescription is or was, or what conditions were corrected by the glasses.

With respect to the July 31 visit to the OBCC, plaintiff seems to allege that defendants Willis and Dade violated his constitutional rights by not ensuring that he receive medical attention that night.

■ On July 23, 2008, the defendants filed a pre-answer motion to dismiss under Fed.R.Civ.P. 12(b)(6). They also filed a motion to dismiss on the ground of qualified immunity, but failed to take plaintiff's deposition within thirty days and to supplement their "pro forma" motion with a memorandum of law fleshing out the basis for their claim of qualified immunity, as required by the Court's rules. The pre-answer motion to dismiss on the ground of qualified immunity is denied for failure to prosecute it in accordance with the Court's rules, and the Court will not entertain the issue again until trial.

### Discussion

#### I. Rule 12(b)(6) standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The court is also required to read a complaint gener-

ously, drawing all reasonable inferences from its allegations in favor of the plaintiff. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. This "applausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007).

■■■ In cases involving a *pro se* plaintiff, "a *pro se* complaint should not be dismissed unless it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [his] claims which would entitle [him] to relief." *Weixel v. Bd. Of Educ. Of City of New York,* 287 F.3d 138, 145 (2d Cir.2002) (citation and internal punctuation omitted). A court must read the *pro se* plaintiff's allegations as raising "the strongest arguments that they suggest." *Id.* at 146 (citation omitted).

In a post-*Twombly* case, the Supreme Court addressed a *pro se* petitioner's pleading burden in a case alleging deliberate indifference to a serious medical condition. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). In *Erickson,* a *pro se* prisoner filed suit against his correction facility, alleging that the defendants terminated a prescribed treatment for his liver condition, "thus endangering his life." *Id.* at 2199. The defendants moved to dismiss, arguing that the plaintiff was removed from the treatment because one of his prescribed syringes had gone missing, which indicated drug use. Under state prison regulations, drug use disqualifies a prisoner from receiving the liver treatment at issue.

A magistrate judge recommended dismissing the complaint, as it was found that the plaintiff had failed to plead "substantial harm." The District Court adopted that recommendation, and on appeal the Tenth Circuit affirmed.

The Court held that the petitioner's claim could not be dismissed on the ground that his allegations about harm were too conclusory. *Id.* at 2200. It noted that Fed.R.Civ.P.8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 2200 (quoting Fed.R.Civ.P. 8(a)(2)). The Court found that the lower courts departed from the liberal pleading standards set forth in Rule 8(a)(2) when they dismissed the complaint. *Id.* Furthermore, the Court found that the "[the lower courts'] departure from the liberal pleading standards ... is even more pronounced ... because petitioner has been proceeding ... without counsel. A document filed *pro se* is to be liberally construed, and ... must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citing Fed.R.Civ.P. 8(f))).

As *Erickson* was decided in the same Term as *Twombly,* it suggests that a *pro se* litigant remains entitled to have his pleadings liberally construed, and that as long as the facts alleged are at least plau-

sible, his complaint should not be dismissed on a 12(b)(6) motion if those facts state a claim for relief. *See also Boykin*, 521 F.3d at 213–14 (noting the same). In particular, labeling an allegation "conclusory" does not justify disregarding its legal effect if it were believed.

## II. Plaintiff's Claims

■ Plaintiff brings suit for the violation of his Eighth Amendment right to adequate medical care. (Am. Compl. V.) However, he does not have such a right. Plaintiff is a pre-trial detainee; the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to him. *See Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir.2003). "This is because a person lawfully committed to pretrial detention has not been adjudged guilty of any crime, and thus under the Due Process Clause, may not be punished in any manner— neither cruelly and unusually nor otherwise." *Id.* at 49–50 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

■■ However, the fact that plaintiff does not have an Eighth Amendment right to adequate medical care is not fatal to his claims. This is because plaintiff's claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment. *Id.* at 49. The Due Process Clause provides a pre-trial detainee "with rights that are at least as great as those of a convicted prisoner." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996). Thus, a pretrial detainee has at least the same right to adequate medical care as a prisoner. *See id.*; *see also Benjamin*, 343 F.3d at 50 ("The Due Process Clause obligates states to consider the welfare of pretrial inmates since, 'in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 851, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Accordingly, the Second Circuit has applied the Eighth Amendment test for adequate medical care to a pre-trial detainee's right to the same. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir.2000); *see also Weyant*, 101 F.3d at 856 ("the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need").

■ The Eighth Amendment "imposes a duty on prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Courts use a two-pronged test to determine whether this right has been violated. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

■ First, the deprivation of care must be "sufficiently serious." *Id.*; *see also Farmer*, 511 U.S. at 825, 114 S.Ct. 1970. This requirement is objective, and is analyzed using a two-part inquiry. Initially, the Court must determine whether the inmate was actually denied adequate care. *See Salahuddin*, 467 F.3d at 279–80. Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is "reasonable." *Id.* at 280 (citing *Farmer*, 511 U.S. at 844–47, 114 S.Ct. 1970).

■ If the care provided was unreasonable, courts must ask whether that inadequacy was "sufficiently serious." *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir.2003). "Factors relevant to

the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin,* 467 F.3d at 280 (quoting *Chance,* 143 F.3d at 702). This analysis requires an examination both of the harm already caused to the prisoner and the likelihood that harm will continue or increase without additional treatment. *See id.* Thus, the "seriousness" inquiry will vary based on the nature of the treatment provided and the claim asserted by the inmate. *See id.*

■ The second component is subjective; it requires that the prison official involved act with a "sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). This is satisfied by a showing that the official acted with "deliberate indifference" toward the plaintiff's health, a state of mind akin to criminal recklessness. *Id.* "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*

■ This mental state is not satisfied by an inadvertent failure to provide adequate medical care. *Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285 (1976) "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim .... In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*

Plaintiff's complaint appears to assert two causes of action against the defendants. First, plaintiff alleges that defendant Calvo's failure to re-schedule an optometrist appointment and help him obtain a new pair of eye glasses violated his right to adequate medical care. Second, plaintiff alleges that defendants Willis and Dade delayed or denied him medical treatment. He does not allege what type of medical treatment they denied him.

### A. Claim Relating to Eye Glasses

The defendants argue that plaintiff's allegation about the delay in receiving his eye glasses should be dismissed because the allegations fail to meet both the objective and subjective component of the Eighth Amendment test.

#### 1. The Objective Prong— "Sufficiently Serious"

The defendants contend that any deprivation plaintiff experienced as a result of the delay in receiving new eye glasses is not "sufficiently serious." In their motion, the defendants do not claim that plaintiff failed to satisfy the first part of the objective prong—that he received adequate medical care. They only dispute the second part of the objective prong—whether his injury was "sufficiently serious."

In *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996), the Second Circuit reversed, in part, a district court's decision granting defendants summary judgment. The court held that the deprivation of eye glasses could satisfy the "sufficiently serious" requirement. In that case, the plaintiff was denied special eye glasses he required, which alleviated his "significant visual deficiencies of double vision and loss of depth perception." *Id.* at 89. The court noted that plaintiff's visual impairment caused him to injure himself by walking or falling into objects, and it found that the resulting injuries were sufficiently serious to satisfy the objective prong of the Eighth Amendment test. *See id.*

The defendants argue that plaintiff has not alleged facts similar to those alleged in

Koehl, and that the allegations he does make—that his vision deteriorated and he suffered from headaches and eyestrain—are not sufficiently serious to satisfy the objective prong of the test.

■ In *Amaker v. Goord,* No. 98 Civ. 3634, 1999 WL 511990 at **6–8 (S.D.N.Y. July 20, 1999), the district court denied the defendants' motion to dismiss an Eighth Amendment claim for inadequate medical care. The plaintiff alleged that his eyesight deteriorated significantly because of poor lighting, he experienced eyestrain and fatigue, and he was forced to go without eye glasses for a period of months. The court found that such allegations were sufficiently serious to satisfy the first prong of the Eighth Amendment test. *Id.* at *8. Here, plaintiff has made similar allegations. Given his *pro se* status, and the Supreme Court's extreme deference to *pro se* pleaders as expressed in *Erickson,* I cannot say that his allegations are insufficient at the motion to dismiss stage.

I appreciate that, once plaintiff's condition is fleshed out in more detail, it may turn out that the damage to his eyes from waiting a few extra weeks for glasses may not rise to the level of a constitutional injury. In *Davidson v. Scully,* No. 81 Civ. 0390, 2001 WL 963965 at **6–8 (S.D.N.Y. Aug. 22, 2001), the district court granted defendants' motion for summary judgment on an inadequate medical care claim. The court found that because plaintiff's eye condition, which resulted in blurry vision, headaches and tearing, was not "one of degeneration or extreme pain," it was not sufficiently serious. *Id.* at **7–8. But *Davidson* was decided on a motion for summary judgment. That is not the procedural posture of this case.

Therefore, the eyeglass claim cannot be dismissed on a pre-answer motion for failure to state a claim.

## 2. The Subjective Prong—"Deliberate Indifference"

The defendants also argue that plaintiff fails to allege any facts showing the defendants acted with a culpable state of mind, i.e., "deliberate indifference." Here, they are on firmer footing.

Plaintiff alleges that he did not receive new glasses as a result of two instances of what he described as "neglect." First, the City "neglected" to transport him to his June 2007 optometrist's appointment. However, plaintiff did not name New York City as a defendant in his Complaint, and there is no claim based on this incident asserted against any named defendant. Second, Dr. Calvo failed to appreciate the urgency of his situation and "neglected" to reschedule the appointment with sufficient alacrity, leading to injury to his eyes. (*See* Am. Compl. II.D.)

■ An allegation of "neglect" fails to state a claim for inadequate medical care under the "deliberate indifference" test. *Chance,* 143 F.3d at 703 ("Negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."). Of course, plaintiff is bringing this action *pro se,* and he may not understand that "neglect" is a term of art. However, for the complaint to survive, plaintiff must have alleged facts tending to show that defendants acted with "deliberate indifference" to his medical condition.

In *Chance, supra,* 143 F.3d at 703–04, the Second Circuit held that, in some instances, medical malpractice could "rise to the level of deliberate Indifference ... when the malpractice involves culpable recklessness, i.e., an act or failure to act ... *that evinces 'a conscious disregard of a substantial risk of serious harm.'* " *Id.* (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)) (emphasis added). The *Chance* plaintiff alleged that two doctors recommended unnecessary courses of

treatment to treat a dental condition, and did so in order to make extra money. The court ruled that the "allegation of ulterior motives [i.e., basing a decision on monetary incentives], if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." *Id.* at 704.

 No facts alleged in the complaint would give rise to such an inference. Nothing else in the complaint would lead to an inference that Dr. Calvo was deliberately indifferent to plaintiff's vision problems. The pleading contains only the conclusory allegation that Calvo "neglected" to take care of his vision problem in a sufficiently prompt manner. Plaintiff alleges that he told Calvo that he needed eye glasses to see and read. However, no allegation suggests that, on July 25, 2007, plaintiff made Calvo aware that serious harm could occur if an optometrist's appointment was not re-scheduled immediately. This deficiency, coupled with plaintiff's affirmative allegation of negligence, is fatal to his pleading.

Accordingly, plaintiff has failed to state a claim for inadequate medical care when he was temporarily deprived of eye glasses and did not have an optometrist appointment re-scheduled on July 25, 2007.

## B. Delay in/Denial of Treatment

Plaintiff's second claim, asserted against defendants Willis and Dade, appears to be premised on a theory that they delayed or denied him access to medical treatment on July 31, 2007. Again, Plaintiff fails to state a claim for relief.

 As to this aspect of his complaint, plaintiff fails to allege facts tending to show that he suffered any injury at all as a result of the failure to provide him with medical treatment on July 31—let alone that he suffered an injury serious enough to pass muster under the first (objective) prong of the test for constitutional injury. In fact, plaintiff does not even bother to specify why he went to the clinic on July 31, 2007—whether in connection with his continuing quest for stronger glasses or for some other reason. Accordingly, he has failed to plead facts that would satisfy the objective prong of the Eighth Amendment test.

Second, there is no allegation that either Willis or Dade was deliberately Indifferent to a life-threatening or rapidly degeneration condition, or that they acted without regard to an excessive risk to inmate health or safety. *Palacio v. Ocasio*, No. 02 Civ. 6726, 2006 WL 2372250 at *11 (S.D.N.Y. Aug. 11, 2006). In *Palacio*, the court granted the defendants' motion for summary judgment. The plaintiff complained that he was not treated for a broken jaw for two hours after he suffered that injury. The court held that because nothing in the record suggested that the delay in treatment was deliberate, or that the plaintiff suffered from a life-threatening or fast-degenerating condition, the delay did not satisfy the requirements of the "deliberate indifference" test. *Id.*

Here, plaintiff alleges that defendant Willis "misplaced" his medical file for three hours. He alleges Willis looked for his file when he showed up for his appointment, did not find it, and only located it three hours later. But plaintiff does not allege that there was anything deliberate about her inability to locate his file. Indeed, plaintiff alleges Willis "pulled" his file the day before, in preparation for his appointment—a specific factual allegation that completely negates any possible finding of indifference (as well as suggesting that his condition, whatever it might have been, was not emergent). These allega-

tions do not plausibly suggest that Willis knew plaintiff suffered from a serious medical condition at the time of his appointment and took steps to ensure that he would not receive treatment.

Plaintiff's claim against Dade fails for similar reasons. Plaintiff alleges that Dade told him that doctors were unavailable, and that he had to return to the housing area due to a medical emergency. Plaintiff alleges that Dade's statement was inaccurate because there were doctors in the clinic area treating new admissions and taking care of sick detainees. But plaintiff does not allege that Dade knew that plaintiff had a serious medical condition that required treatment, or that his condition was more serious, and more in need of immediate attention, than the conditions of the patients who were getting treatment ahead of him. Thus, nothing suggests that Dade consciously disregarded his condition or was deliberately indifferent to his medical needs. Rather, the facts alleged suggest that plaintiff's appointment was triaged behind some medical emergency, and that the staff was unable to reach him before 1:30 a.m.

Accordingly, plaintiff's delay/denial of treatment claim is dismissed prior to trial. *Id.*

### III. Conclusion

The open question is whether to grant plaintiff leave to replead.

 A court "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir.1995). Given plaintiff's *pro se* status, it seems prudent to give him an opportunity to supplement his allegations, if he can, with specific facts tending to show that some or all of the defendants' conduct qualifies as deliberate indifference.

Therefore, the claims asserted in the complaint are dismissed without prejudice. Within thirty (30) days of the date of this decision, plaintiff may file a second amended complaint. In that pleading, plaintiff must plead specific facts that would give rise to an inference that (1) Dr. Calvo, (2) Willis, and (3) Dade knew that he had a sufficiently serious medical condition and nonetheless deliberately chose not to get him treatment. In this regard, plaintiff needs to set forth many more facts about both his eye condition (including, if possible, some allegations about the strength of his prescription and about any injuries he suffered as a result of not having glasses— for example, were these reading glasses, or did plaintiff need them all the time? What specific conditions were corrected by his prescription?) and about whatever issue caused him to make an appointment at the clinic for July 31. He must also set forth facts tending to show more than "neglect" by the individuals involved in arranging for his care, and about any injury he suffered because he did not receive timely care.

If a second amended complaint is not filed by December 31, 2008, the Court will convert the dismissal without prejudice to dismissal with prejudice. If a new complaint is filed, defendants have thirty days to move to dismiss it for failure to state a claim (not on the ground of qualified immunity).

This constitutes the decision and order of the Court.