**JAY SHENK, Melissa Shenk,
Plaintiffs–Appellants,**

v.

**CATTARAUGUS COUNTY,** Ernest Dustman, in his official capacity as Cattaraugus County Sheriff, Jamie Babb, individually and in his official capacity as an employee of the Cattaraugus County Sheriff's Department, Deputy Gonska, individually and in his official capacity as an employee of the Cattaraugus County Sheriff's Department, John Doe # 1, individually and in his official capacity as an employee of the Cattaraugus County Sheriff's Department, John Doe # 2,

**individually and in his official capacity as an employee of the Cattaraugus County Sheriff's Department, Defendants–Appellees.**

**No. 07–4814–cv.**

United States Court of Appeals, Second Circuit.

Jan. 7, 2009.

Norman E.S. Greene (Rafael O. Gomez, Scott J. Bizub, of counsel), Bouvier Partnership, LLP, Buffalo, NY, for Appellants.

Edward J. Wagner, Wagner & Hart, Olean, NY, for Appellees.

PRESENT: Hon. ROBERT D. SACK, Hon. SONIA SOTOMAYOR and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Jay and Melissa Shenk appeal from an order granting the defendants' motion for summary judgment in this action brought pursuant to 42 U.S.C. § 1983. They allege that the defendants violated Jay Shenk's constitutional rights when the individual officers deprived him of certain medication while he was temporarily detained in a holding cell at the Cattaraugus County Courthouse. We assume the parties' familiarity with the facts and procedural history of this litigation.

We review the decision to grant the motion for summary judgment *de novo*. *Coan v. Kaufman*, 457 F.3d 250, 254 (2d Cir.2006). "[C]onstruing the evidence in the light most favorable to the nonmoving party," *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003), here, the Shenks, we may affirm only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). "[A] fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Mitchell*, 350 F.3d at 47 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

It is not clear which constitutional rights are at issue here, because it is not clear whether Jay Shenk was detained pursuant to a contempt conviction or as a means to compel him to pay his outstanding child support. In the former circumstance the Eighth Amendment defines a minimum standard, *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996), but in the latter the Eighth Amendment does not apply, *see Ingraham v. Wright*, 430 U.S. 651, 667–68, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *United States v. Dien*, 598 F.2d 743, 745 (2d Cir.1979) (per curiam). We have no need to conduct the analysis, however, because the parties agree that the claim should be analyzed under the Due Process Clause of the Fourteenth Amendment, which Shenk asserts supplies "the same" constitutional standard as the Eighth Amendment minimum. While we are not bound by the parties' stipulation as to the applicable law, in this case we do not think that the outcome depends on which standard applies. We therefore apply the Eighth Amendment standard to Shenk's claim for relief as Shenk requests.

Shenk conceded at oral argument that the only constitutional injury he alleges is the deprivation of his medication. "'In

order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs.'" *Smith v. Carpenter,* 316 F.3d 178, 183 (2d Cir.2003) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)) (internal quotation marks and brackets omitted). The "serious medical needs" inquiry is "objective" because it seeks to "measure[ ] the severity of the alleged deprivation." *Id.* at 183–84. The "deliberate indifference" inquiry, by contrast, is "subjective," asking whether "the defendant ... acted with a sufficiently culpable state of mind." *Id.* at 184.

Not every medical need is a serious medical need. We have defined the term as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (quotation marks omitted). In asking whether a medical need is sufficiently serious, we will consider, among other factors, " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " *Chance,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). A finding of a serious medical need "is necessarily contextual and fact-specific," and thus "must be tailored to the specific circumstances of each case." *Smith v. Carpenter,* 316 F.3d at 185 (internal quotation marks, brackets, and ellipsis omitted).

We will conclude that there has been "deliberate indifference" to the plaintiff when the relevant official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[T]he official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have drawn] the inference." *Id.*

Shenk argues that he "had a prior history of heart attacks" and therefore reasonably believed when he asked for his nitroglycerin pills that he was having a heart attack from which he might die. But there is no evidence in the record from which to conclude that the deputies knew Shenk had or thought he had a heart condition. Nor has Shenk provided evidence that the deputies actually thought he was at a substantial risk of having a heart attack. They were therefore not deliberately indifferent to a medical need arising from Shenk's heart condition.

Shenk argues that the deputies should have known of facts from which they could have drawn an inference that he had a heart condition because they took his nitroglycerin from him before he was detained. He acknowledges that there is no evidence that the deputies ever read the medication labels. But he contends that "[t]heir failure to read the labels on the medications cannot be used as an excuse when they had a duty to be aware of his condition." Shenk provides no authority for the existence of any such duty, however, nor does he explain why we should conclude that the labels on prescription bottles supply, in effect, constructive notice to law enforcement officials without medical training of the medical need for which the medication is prescribed.

While Shenk's constitutional claim cannot rest on his heart condition, a reasonable juror could conclude, from evidence that Shenk was agitated and repeatedly asked for his medication, that the deputies were aware Shenk had *some* medical need. And from Melissa Shenk's statement during the family court proceedings that

Shenk had an anxiety condition, a reasonable juror could conclude that the deputies had reason to identify the medical need as anxiety.

We have never held that mental anxiety is a serious medical need, but the condition appears to satisfy at least two of the *Chance* factors, anxiety being a condition that a doctor would find important, and which can affect one's daily activities. *Cf. White v. Napoleon*, 897 F.2d 103, 111 (3d Cir.1990) ("We are not prepared to hold that inflicting mental anxiety alone cannot constitute cruel and unusual punishment."). Assuming for these purposes that anxiety is a serious medical need, then, the question is whether the individual defendants were deliberately indifferent to that need. We agree with the magistrate judge that Shenk has proffered insufficient evidence to support a finding that they were. He points to no evidence that the deputies actually drew the inference that his anxiety, though manifest, posed a substantial risk of harm. The only relevant evidence in the record is the deputies' repeated denial of his medication. But Shenk himself states that "the defendants['] custom and policy was to withhold all personal effects of a detainee, including medications, regardless of whether necessary or not." Contrary to Shenk's suggestion, the fact that this policy was passed down from senior officials through training does not make it invalid. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (noting that the "edicts or acts" of senior officials may represent a policy or custom). Shenk thus, in effect, concedes that the denial of medication is not probative of the deputies' actual inference that he was at risk.

Summary judgment was therefore appropriate on the deprivation of medical care claim. Because the Shenks lack any underlying claim of a deprivation of a constitutional right, summary judgment was properly granted on the municipal liability claim too. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (stating that such a claim requires a plaintiff "to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right" (internal quotation marks and citation omitted)).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.